LaRamoke, Judge, and Jones, Chief Judge,
concur.
Madden, Judge, and Whitaker, Judge, took no part in the consideration and decision of these cases.
BINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Currell Vance, and the briefs and argument of counsel, makes findings of fact as follows:
*10 1. These two cases have been joined for the purposes of trial because of similarity of issues. The claim of each of the plaintiffs in these two cases is for night pay differential for hours worked between 6 p.m. and 6 a.m. during overtime periods as a meat inspector, and rests upon the application of the night pay differential provisions of the Federal Employees Pay Act of 1945, as amended by the Pay Act of 1946, et seq. 59 Stat. 298, 60 Stat. 218, 5 U.S.C. 921. Each plaintiff was employed as a meat inspector by the Department of Agriculture during the period subsequent to July 1, 1950, for which compensation is sought. Each plaintiff while serving as a meat inspector was a Classified Civil Service employee, employed at a meat inspection station maintained by the Meat Inspection Branch of the Department of Agriculture.
2. Plaintiffs’ basic rates of compensation are established by the Classification Act of 1949, as amended. Plaintiffs are paid for overtime, and holiday work in accordance with Secretary’s Memorandum No. 1121, Revision 2. Plaintiffs’ right to night pay differential is controlled by the Federal Employees Pay Act of 1945, as amended in 1946.
3. Testimony introduced by both sides in the case detailed the working conditions, the inspection process, and the methods of payment in New York City; however, the situation described for New York is approximately the same throughout the country.
4. Every establishment in which cattle, sheep, swine, or goats are slaughtered for transportation or sale as articles of interstate or foreign commerce, or in which meat, meat byproducts, or meat food products of, or derived from, cattle, sheep, swine, or goats are canned, cooked, cured, smoked, packed or otherwise processed and prepared for transportation or sale as articles of interstate or foreign commerce, which are capable of being used as food for man, must be inspected by the Meat Inspection Branch of the Department of Agriculture.
5. Each establishment to be inspected is designated by an official number which is used to identify all products processed in the establishment. Inspectors from the Meat Inspection Division (now Meat Inspection Branch) of the *11 Bureau of Animal Industry (hereinafter the “Bureau”) are assigned to each establishment to supervise the processing operation. These inspectors are rotated from plant to plant every six months.
6. The Departmental Regulations governing meat inspection require that no establishment or department of an official establishment can be operated except under the supervision of a Meat Inspection Division employee, and an inspector is required to be present throughout the meat processing period of operation in each establishment.
7. Each inspection station has an inspector in charge. Large stations such as New York City are divided for geographical purposes into circuits with an assistant inspector in charge of each circuit. A group of inspectors are assigned to each circuit and are in turn assigned to the various processing establishments in the circuit by the circuit supervisor. Some of the inspectors are veterinarians who are assigned to the post mortem (an autopsy to determine the animal’s freedom from disease) operations and supervisory positions. The non-veterinarians or meat inspectors are assigned to assist the veterinarians with post mortems or to inspect products being processed in the various establishments. All of the plaintiffs involved in these cases are non-veterinarians and work in processing and slaughtering plants.
8. These plaintiffs presently hold Civil Service grades ranging from GS-5 to GS-8. They now start at grade GS-5 and are assigned for training experience to assist higher grade inspectors. Prior to October 1957, the starting grade was that of GS-8. As beginners or trainees they seldom work beyond 8 hours, and the processing plants do not reimburse the Bureau for overtime performed by these trainees when they are assisting the more experienced inspectors. If a trainee is required to work beyond 8 hours in an emergency he does receive overtime payment. Most of the inspectors assigned to the processing establishments are either grades GS-7 or GS-8. Inspectors holding grade GS-9 are assigned to import work. The supervisor inspectors hold grades GS-11 and above.
9. There are no formal educational requirements for qualification as a meat inspector, but practical experience in meat *12 processing, butchering, or certain types of animal work is required. Promotion to higher grades depends upon experience, initiative and available openings at the higher grade.
10. The meat inspector assigned to the processing establishment oversees the processing of all the products processed in that plant and supervises the sanitation of the plant facilities, equipment and personnel. He inspects the meat and meat products as they are cured, chopped, mixed, blended, stuffed, cooked, smoked, dried, packaged, and labeled. He maintains a close check on additives used in curing, weights of components used in mixing of certain products, and the temperatures at which the meat is cooked or smoked. The brands or inspection stamps which show that the meat is “U.S. Inspected and Passed”, and identify the processing establishment by number are under the jurisdiction of the meat inspector assigned to that plant and he is responsible for the custody of the brands and their application to only that meat which has passed inspection.
11. Approximately 10 to 12 of the nearly 70 processing establishments in the New York, New York Station (including Jersey City) are on a 24-hour operational schedule. Nearly all of the other processing plants work on an operational schedule which is longer than 8 hours. In addition, there are about 10 establishments engaged in slaughtering. Each inspector is required to remain at the plant to which assigned during the entire period of processing or until relieved.
12. At all times during the period involved in these cases, each plaintiff received overtime compensation for hour worked in excess of 8 each day. However, plaintiffs did not receive night pay differential during the period involved for the hours worked in excess of 8 each day, when such hours fell between 6 p.m. and 6 a.m. Night pay differential was paid by the Bureau, however, for such hours in 1946. It was authorized by a Meat Inspection Division directive in 1946 and cancelled by a Division directive in 1947. It is the night pay differential for these overtime hours that plaintiffs now claim. The Bureau has refused to pay plantiffs night differential during overtime hours on the ground that such hours are not part of a regularly scheduled tour of duty.
*13 13. The administrative regulations of the Department of Agriculture pertinent to these claims provide:
Title 1. Chapter 3. Section 298
b. Overtime. Overtime means work performed by an employee in excess of the 40-hour basic workweek by order or approval of employees specifically delegated the authority to order or approve such overtime. Regular overtime is that overtime that is to ~be included within the regularly scheduled administrative workweek. Irregular or occasional overtime means overtime work that is ordered or approved in excess of the regularly scheduled administrative workweek, d. Workweeks.
(1) Basic worhweeh. A basic workweek consists of 40 hours extended over not more than 6 of any 7 consecutive days. It has been established that the basic workweek for the Department shall generally be 5 days of 8 hours each, Monday through Friday.
The regulations governing night differential pay for the period from July 1, 1950 to May 5, 1952 provided:
Chapter 3. Subsection 4 — Night Differential
321. General. All employees of the Department shall be paid a 10-percent increase over their basic compensation, within the [$10,330] limitation, for all regularly scheduled hours worked between 6 p.m. and 6 a.m. [standard time] regardless of whether they occur during an overtime period or on a holiday, except the Secretary of Agriculture; employees stationed outside the continental limits of the United States, including those in Alaska, who are paid at local prevailing native wage rates for the area in which employed; and employees whose wage rates are established by wage boards unless granted night differential under a wage board schedule. Full-time, part-time, and intermittent employees whether per annum, per diem, contract, or cooperative (federally controlled) are eligible to be paid the night differential provided the work is performed during a regularly scheduled tour of duty including night hours approved in accordance with the policies and instructions of the Office of Personnel. (See 8 AR 182.) (5 U.S.C. 921; 25 Comp. Gen. 86; [Comp. Gen. Dec. B-75819, dated January 3, 1959]).
322. Night-Differential Pay For Overtime Hours. While night differential shall not be paid for occasionally ordered overtime hours worked between the hours of 6 p.m. and 6 a.m. [standard time], it may ibe paid for *14 any overtime hours comprising regularly scheduled work periods. If an employee having a tour of duty including night work should be in a nonpay status during the basic workweek, any occasionally ordered overtime hours worked between these hours may be substituted for a corresponding time lost during the basic workweek and straight time plus night differential shall be paid for such overtime work (25 Comp. Gen. 102).
From May 5,1952, to August 7,1956, these regulations provided :
321. General. All employees of the Department shall be paid a 10-percent increase over their basic compensation, within the $10,330 limitation, for all regularly scheduled hours worked between 6 p.m. and 6 a.m. regardless of whether they occur during an overtime period or on a holiday, except the Secretary of Agriculture; employees stationed outside the_ continental limits of the United States, including those in Alaska, who are paid at local prevailing native wage rates for the area in which employed; and employees whose wage rates are established by wage boards unless granted night differential under a wage board schedule. The hours of 6 p.m. and 6 a.m. used may be either standard or daylight saving time, depending upon whichever time is observed where the night work is performed. Full-time, part-time, and intermittent employees, whether per annum, per diem, contract, or cooperative (federally controlled) are eligible to be paid the night differential provided the work is performed during a regularly scheduled tour of duty including night hours approved in accordance with the policies and instructions of the Office of Personnel. (See 8 AR 182.) (5 U.S.C. 921; 25 Comp. Gen. 86;
Public Law 288,81st Congress.)
322. Night-Differential Pay For Overtime Hours. While night differential shall not be paid for occasionally ordered overtime hours worked between the hours of 6 p.m. and 6 a.m. it may be paid for any overtime hours comprising regularly scheduled work periods. If an employee having a tour of duty including night work should be in a nonpay status during the basic workweek, any occasionally ordered overtime hours worked between these hours may be substituted for a corresponding time lost during the basic workweek and straight time plus night differential shall be paid for such overtime work (25 Comp. Gen. 102).
*15 And for the period after August 7,1956:
322. Night Differential, a. General. All eligible employees of the Department shall be paid a night differential consisting of a 10 percent increase over their basic compensation for all regularly scheduled hours of work between 6 p.m. and 6 a.m., subject to the maximum salary limitation. The hours 6 p.m. and 6 a.m. used may be either standard or daylight saving time, depending upon whichever time is observed in the locality concerned (5 U.S.C. 921; 25 Comp. Gen. 86; 5 U.S.C. 914).
b. On Overtime Hours. Night differential shall be paid for any overtime hours comprising regularly scheduled work periods [between the hours of 6 p.m. and 6 a.m.], but shall not be paid for occasionally ordered overtime worked between such hours. If an employee having a tour of duty, including night work, should be in a non-pay status during night hours in the basic workweek, any occasionally ordered overtime hours worked between 6.p.m. and 6 a.m. may be substituted for a corresponding time lost during the basic workweek and straight time plus night differential shall be paid for such overtime (25 Comp. Gen. 102; 5 U.S.C. 921).
The Regulations defining a regular workweek are found in Title 8, Chapter 7, and provide:
180. Definitions.
c. Regularly scheduled administrative worhweeh or regularly scheduled towr of duty for full-time employees means the period within an administrative workweek when such employees are required to be on duty regularly. For employees other than full time, it means any regularly scheduled work period to which they may be assigned. The regulations contained in chapter 8 of this title prescribe the method of establishing such periods for full-time employees.
And in Section 182. Night Pay Differential.
a. Amount of differential. An employee entitled to receive the night differential shall be paid an amount equal to 10 percent of his basic pay for all night work included in a regularly scheduled tour of duty to which he is assigned. The differential shall be paid regardless of whether the night work on which it is based occurs during an overtime period or on a holiday. It shall be *16 paid in addition to any extra pay for overtime or holiday work. However, it shall not be included in the basic rate of pay in computing any overtime or holiday pay to which an employee may be entitled.
Chapter 8, Hours of Duty and Holidays provides:
c. Night Worh. Night work is any work performed as part of a regular tour of duty between the hours of 6:00 p.m. and 6:00 a.m. Tours of duty should not include night work unless it is essential. See chapter 7, section 4, regarding the differential of 10% paid for such work.
14. On July 3, 1950, the Chief of the Bureau issued Circular Letter 404.1 addressed to All Divisions and Field Stations, providing in part:
VII. Night Worh
Existing law provides for the payment of a night differential for all night work actually performed as fart of a regularly scheduled towr of duty between the hours of 6:00 p.m. and 6:00 a.m. (local time).
Ordinarily, it is not feasible to predetermine and schedule regular tours of duty extending beyond 6:00 p.m. Therefore, night differential is not payable on overtime work performed on an occasional or irregular basis after 6:00 p.m. of any day; Officials in charge should organize the work of their respective stations in such a manner as to permit its being performed during the most productive and reasonable hours of the day. Every effort should be made in line with work requirements to establish working hours so that the daily tours of duty which compose the 40-hour workweek will fall between the hours of 6:00 a.m. and 6:00 p.m. (local time). The foregoing does not change policy and procedure now in effect in the Meat Inspection and Virus-Serum Control Divisions.
On October 7,1953, the Chief of the Bureau revised and reissued Circular Letter 404.1, providing in part.
VII. Night Work
Existing law provides for the payment of a night differential for all night work actually performed as part of a regularly scheduled tour of duty between the hours of 6:00 p.m. and 6:00 a.m. (local time).
Ordinarily, it is not feasible to predetermine and schedule regular tours of duty extending beyond 6:00 p.m. Therefore, night differential is not payable on *17 overtime work performed on an occasional or irregular basis after 6:00 p.m. of any day. Officials in charge shall organize the work of their respective stations m such a manner as to permit its being performed during the most productive and reasonable hours of the day. Every effort shall be made in line with work requirements to establish working hours so that the daily tours of duty which compose the 40-hour workweek will fall between the hours of 6:00 a.m. and 6 p.m. (local time).
15. In those processing establishments operating on a 24-hour schedule, the Bureau has made a practice of assigning 2 meat inspectors, and each inspector works on a fixed shift assignment of 12 hours, one from 7 a.m. to 7 p.m., the other from 7 p.m. to 7 a.m.
16. In those processing establishments not operating on a 24-hour schedule, the starting time is usually 7 a.m. The time for cessation of operations is dependent upon the volume of meat or meat products being processed in the establishment and the nature of the operation. This finishing or closing time which varies as to clock hour, almost always extends beyond 8 hours every day except Saturday, although it can extend beyond 8 hours even on Saturday. The meat inspectors assigned to these establishments must remain at the establishment to which assigned until the processing of the meat or meat products has been finished for that day.
17. The 24-hour establishments are processing every day, except Saturday, between the hours of 6 p.m. and 6 a.m. The establishments not operating on a 24-hour schedule also perform work requiring inspection between the hours of 6 p.m. and 6 a.m., and the scheduling of these hours is controlled by each establishment’s processing operation.
18. Each processing establishment reimburses the Secretary of Agriculture for overtime services required of meat inspectors in its plant. Permission for an establishment to obtain overtime inspection service must be secured from the Bureau. The various processing establishments file written requests with the Meat Inspection Division for permission to work overtime. Every establishment in the New York area has made such a request.
19. Inspectors on a slaughtering assignment or assigned to import duty may work on a schedule of 8 hours or less.
*18 Those assigned to processing establishments work habitually in excess of 8 hours daily.
20. The official pay records establish that for the period involved in these claims plaintiffs performed some overtime on the majority of the days they were assigned to processing establishments. Plaintiffs are assigned to regularly scheduled tours of duty. From time to time, the recurring overtime worked by plaintiffs includes hours between 6 p. m. and 6 a. m.
A summary of these pay records shows the following:
Name GS grade at start of record period Total days worked Days on overtime Days assigned to slaughtering
Juan Aviles_ GS-4.. 1296 733
Charles Axt, Jr.. Hugh E. Baker. Joseph F. Bartunek. — . Ernest Bettencourt. GS-5.. GS-6.. GS-4.. GS-7.. 1487 1083 1428 1426 1238 754 768 1166 12 423
Fred G. Beyerle. Adrien Chabot_ GS-7.. GS-6.. 1262 1351 789 1168 1225
John Chupa_ Herbert Cole_ William M. Davis_ GS-6.. GS-6-. GS-7.. 1454 1515 1337 1196 1107 1242
Joseph J. Del Vicario... Napoleon J. Demers_ Harry Ebner_ Hyman Erdwein_ David M. Fellner_ Norman J. Francis_ GS-5.. GS-6.. GS-6.. GS-6.. GS-5.. GS-5.. 1327 1422 1615 1501 1308 1495 696 1300 1523 1415 1034 1382 725 332
Irving Friedman_ Isadore Goldberg.. Dave B. Gorland_ GS-6.. GS-3.. GS-4.. 1523 1207 1364 1452 627 735 806 840
Frederick Gregson_ Joseph I. Gross_ John J. Gurley. Charles E. Haggerty_ Maurice J. Hebert_ GS-7.. GS-5GS-7.. GS-5.. GS-6-. 1386 1252 1458 1423 1408 1235 766 1382 1303 1068 [1]26 [2] 155 18
Saul Hilburg-. Henry A. Howell_ Walter it. Kinneen_ Francis J. Leary_ GS-5.. GS-5.. GS-6.. GS-6.. 1423 1359 1347 1408 1075 1261 962 1317 343
Solomon Lewis_ GS-5.. 1088 920 304
Joseph P. Manco_ Jesse O. Newton_ GS-5-. GS-5.. 1367 1279 815 921 405 127
Angelo Pesce_ Castontis Petronis. Stephen M. Popp, Jr... David Rosen_ GS-4.. GS-5.. GS-6.. GS-4.. 1452 1451 1396 1278 917 950 1347 502 373 460 [3]309
Laurence F. Regan. Sidney Roth_ Edgar A. Rothschild_ Marvin E. Rubenstein.. GS-6.. GS-6.. GS-5GS-4— 1338 1497 1307 1403 1224 1397 1163 623 1107
Walter I. Schusterick... Othello D. Thompson.. Cesare L. Tricarico_ John A. Urbank_ GS-6GS-6— GS-3GS-5— 1389 1384 1166 1428 1246 1188 383 1095 780 280
Hurley W. Ward_ Robert P. Wilson. Herman P. Weippert... John F. McMahon_ GS-5— GS-6— GS-5— GS-5.. 1349 1305 1299 1113 790 1220 761 922 601 178
*19 21. Plaintiffs acting through their union representative, the president of the Eastern Council of Meat Inspection Lodges, sought to obtain payment for night differential while working overtime hours through a request made to the local office of the Bureau in New York. This request was forwarded by New York to the Administrative Officer of the Meat Inspection Service in Washington. As early as 1950 efforts had been made by individual plaintiffs to obtain night differential for overtime hours worked between 6 p. m. and 6 a. m. By letter of April 3, 1953, the Administrative Chief of the Bureau advised the administrative assistant of the Meat Inspection Division in New York, as follows:
Mr. Erdwein’s attention should be called to the specific requirement of this paragraph, which reads as follows:
“An employee entitled to receive the night differential shall be paid an amount equal to 10 percent of his basic pay for all night work included in a regularly scheduled tour of duty to which he is assigned.”
While it is true that the paragraph referred to provides further that “the differential shall be paid regardless of whether the night work on which it is based occurs during an overtime period or on a holiday”, it can only be paid when the overtime period is a part of a “regularly scheduled tour of duty.”
In view of the irregularity with regard to the performance of overtime work in the Meat Inspection Division, it has been and is considered impractical from an operating standpoint to establish and include any overtime hours as a part of a “regularly scheduled tour of duty” as required by the law and regulations for payment of night differential on the basis of overtime work performed.
It is hoped that this information will be of assistance to you in handling this matter with the representative of the local BAI lodge of the A.F.G.E.
On April 9, 1953, H. W. Haunss, the administrative assistant of the Meat Inspection Division in New York answered the president of the Eastern Council of Meat Inspection Lodges as follows:
Referring to your inquiry concerning the provisions of Paragraph 182(c) of Chapter 7, Title 8, of the Field Manual of Administrative Requisitions affecting the payment of night differential to employees engaged in *20 overtime work on meat inspection activities, the Washington office has called our attention to the specific requirement of this paragraph, which reads as follows:
“An employee entitled to receive the night differential shall be paid an amount equal to 10 percent of his basic pay for all night work included in a regularly scheduled tour of duty to which he is assigned.”
While it is true that the paragraph referred to provides further that “the differential shall be paid regardless of whether the night work on which it is based occurs during an overtime period or on a holiday”, we were advised that it can only be paid when the overtime period is part of a “regularly scheduled tour of duty” and that, in view of the irregularity with regard to the performance of overtime work, the Division considers it impractical, from an operating standpoint, to establish and include any overtime hours as part of a “regularly scheduled tour of duty” as required by the law and regulations for payment of night differential on the basis of overtime work performed.
I hope that the above information satisfactorily answers your question.
22. Defendant’s witness, Dr. Meyer Brodner, the Inspector in Charge in New York from June 1950 to May 1958, testified that it is not impractical to pay night differential during overtime hours. He did not testify as to the practicality of scheduling overtime hours as part of the regular tours.
CONCLUSION OK LAW
Upon the foregoing findings of fact, which are made a part of the judgments herein, the court concludes as a matter of law that the plaintiffs are entitled to recover and judgments will be entered to that effect. The amounts of recovery will be determined pursuant to Rule 38(c).
In accordance with the opinion of the court and on memorandum reports of the commissioner as to the amounts due thereunder, it was ordered on June 9,1961, and July 20,1961, that judgments be entered for the plaintiffs.

 Import duty.

 Includes 58 hours of office duty.

 Also includes clerking at headquarters.